Good morning. May it please the court, my name is Richard Wall. I represent the plaintiffs in this matter and the panelists on appeal. Could you speak up just a little bit? Yes I will, thank you. I think the important thing to remember in this matter is that this this is a summary judgment decision and so this court basically engages in the same analysis that the district court is required to that is its de novo review and on summary judgment all facts and inferences are to be taken in the light most favorable to the non-moving party that's a well-established principle and I think when you review the record in this case it's very clear that the district court did exactly the opposite that the district court viewed every fact and every possible inference in had to do that in order to grant summary judgment in this case and I would like to just point out one example I think there are many in the record of the court doing this but one that I think is very telling is the incident report in which Ms. Wilcox reported that her boyfriend at the time a person named Trevor Franklin had been abusing her in some way making her take drugs told the officer she was a complaining party at this point that that he was made her feel like she was being held captive and nothing no one was arrested at that out of that incident or anything was happened but Ms. Wilcox was taken by the happened about two months before the incident resulted in the plaintiff's arrest and that arrest was based on her story that plaintiffs had held her captive held her captive physically for at least six months prior to that date so here she's in contact Ms. Wilcox is in contact with a police officer with her child is taken to a place of her choosing and the district court says that incident corroborates her story simply because she was making similar allegations against Mr. Franklin that she then later made against the plaintiffs in this case that is drawing inferences only those favorable to the moving party and ignoring all the favorable inferences that you can draw from that set of facts for the non-moving party are the places the same excuse me are the places the same where the incidents took place no I'm sorry you said in the prior incident the police took her to a place of her choosing that's place one yes place two I'm referring to is the place where the search warrant was executed are they the same place we don't know because we don't know where the officer took her okay that was never explained and the report doesn't indicate we just don't know we don't know but there are numerous examples of the court looking at acknowledged facts in this case and interpreting them in a way that only favors the moving party and ignoring to the extent that they tend to undercut miss Wilcox story show raise huge red flags that she was not being truthful and then says well that's good enough that's probable cause when these are the issues every you have to look at everything that Scogin hadn't had in front of him that he had when he applied for the search warrant right no no you have to look at everything he knew when he made the arrest because that's when he has to have probable cause not when he applies for the search warrant the search warrant is simply to search for evidence it was not an arrest warrant so what counts is what he knows when he makes the arrest and at that time not only did he know all these other things that made miss Wilcox a story questionable at that time did he know about the prior incident at the time yes he admitted he had rest he admitted in his deposition he had read that report but he that the important thing here is that when they searched the house they found absolutely nothing that miss Wilcox said would be there and by his own words detective Scogin admitted he said there and he said there would be drugs or drug paraphernalia there and there was paraphernalia right there was one or two pipes that apparently had drug residue but we don't even know who the pipes belong to there's nothing that connected those that those pipes with my clients in any way other than it was found at that residence there was another person at the residence who was simply let go we know that miss Wilcox was likely at that residence at some point because she was able to take the police officers there and tell them that my clients lived there so she obviously knew my clients and knew they lived there but that doesn't indicate any kind of criminal activity that doesn't support her story of being held captive for six months to a year and being forced into prostitution and forced to take drugs it doesn't support that at all all the things that would support that story were not found at that residence the only thing that was supported were the so-called innocuous details counsel I guess I have the same point that judge Hawkins had I thought part of her story was that they made her take meth because they wanted her addicted to manipulate an addicted person for press prostitution and that the pipe found at the residence was used for meth that's correct why wouldn't that corroborate her in part well it might corroborate that she took meth because we know she admitted the house and maybe it was her pipe again you can argue some of these things in various ways but that's the whole point at this stage everything has to be viewed in the light most favorable to the non-moving party which is the plaintiffs correct but they only have to have probable cause they don't have to have definite cause before you spend more of your limited time on this why don't you talk about the statements that were made by law enforcement following the arrest and that that was what I was going to move to next I think the case is even clearer when it comes to the defamation claim here the public relations officer or public information officer went on TV on all three major stations in the Spokane area and said everything that this woman told us would be found in that house was in fact found there and what she everything she told us was corroborated he used exactly those words which was exactly the opposite of what happened and of course it gives the public the impression that there's no doubt these people are guilty because the police have corroborated everything this complaining witness has said and when asked about where he got his information detective Chamberlain or officer Chamberlain didn't know I he may have spoken to Scogin but detective Scogin didn't deny that he spoke to a deputy Chamberlain he may have spoken to his lieutenant but he doesn't remember what he was told and I mean as I see that that is almost a definition of recklessness with regard to dissemination of that kind of information he didn't document where he got this information a jury could conclude he simply made it up that he simply assumed since an arrest was made that they must have found all the things that this witness had said would be there otherwise they wouldn't make an arrest and then he never spoke to anybody that's a logical inference from the facts we have here but again looking at the facts in the light most favorable to the plaintiffs in this case that's an issue that needs to go to a jury that should not be decided on summary judgment and I'll reserve the rest of my time thank you thank you thank you counts thank your honors may I please the court and counsel Heather Yankley here on behalf of the two defendants who the appeal was filed against which are deputy Scogin and deputy Chamberlain there was essentially two issues one was the issue of whether or not there was qualified immunity and then the issue of the defamation and I'll address the defamation just just very briefly that was the issue that you judge Hawkins raised I just wanted to make sure that both were covered you take them in any order you want oh I'll touch on that one because I think that issue is fairly short and a little more simple at least from the defense perspective your honor with respect to deputy Chamberlain if the court refers to er 114 the statement that he made was actually quote everything that our victim said was going to be in the residence basically everything was corroborated so she's being very helpful with the investigation this is a unique complicated investigation so there's a lot more work that has to be done within this investigation so you tell the officers there were weapons inside the house she did your honor and were there there were not did she tell them there was a deadbolt lock on the basement she did your honor and was there there was not so the distinction sound like everything to me it is not everything but if you if you listen to his statement your honor it's basically everything was corroborated so he's not deputy Chamberlain isn't saying we found the specific evidence he's saying everything that she said would be there and it's and remember this is a human trafficking incident or allegation everything or things were found in the house that would support the evidence of human trafficking and those are found that were found by the search for their computers and electronic devices there was drugs found there was a pipe found there was a letter to between the victim slash informant and her boyfriend that corroborated that she in fact had been there and then your honor you also have to look at it in terms of the experience and training that the deputies had with respect to prostitution so if you take all of those together that's what Chamberlain deputy Chamberlain said when he said it's corroborated corroborated doesn't mean everything that was supposed to be found there was found there a couple of two or three days after the execution of the warrant and the arrest of the plaintiffs I take it was your office determined this there was insufficient evidence to go forward it actually took longer than that your honor it was about a 23 day conclusion what did the Spokane County Sheriff's Office find that led to that conclusion they were the ones that did the inquiry it was not the prosecution office correct your honor okay what did they find that led them to believe that at the end of the day what the young woman had told them was not true essentially your honor they could not upon further investigation past the probable cause threshold they couldn't corroborate her statements in fact the more detailed investigation that they did the more her statement unraveled and I believe that in deputy Scogin's affidavit he he states that Sheriff's Office ever apologized to these plaintiffs your honor I can't answer that specifically I will tell you just based on my experience with Sheriff Konezovich that he does make efforts to the record show it does not Sheriff's Office apologized to these plaintiffs it does not your honor now one last thing on the the issue of the defamation you have to show actual malice in the state of Washington and there's simply no evidence of actual malice for the court to consider in this case deputy Chamberlain and deputy Scogin both said or detective Scogin both said we didn't know these individuals we don't have any knowledge of them prior to this incident so there's not even a scintilla of the actual malice that's required in Washington to to bring that assuming arguing I thought that it's recklessness your honor it's actually it is actual malice but is can't malice be shown or can it be shown by reckless disregard of the truth that it probably can be your honor but in this particular case the the public information officer deputy Chamberlain came out to the scene the if 4 a.m. the media was already there they were alerted yes and and the record indicates that nobody knows who alerted them it's not uncommon in Spokane and probably everywhere else but the reality of it is is based upon the time that the PIO had to rely on the information in other words he got the return of a search warrant he looks at the information he talks to the lieutenant and he goes on the information that he's given because the media is there at the time that's not that's not reckless your honor it's it's very clear from deputy or detective Scogin's affidavit and his his report that he truly believed at the time based upon the additional information that they received out of the search warrant that he had probable cause to arrest these individuals so I don't believe that that rises to the level of recklessness might be grandstanding but not malice I don't I don't even know that you could call it grandstanding your honor I simply believe that based upon the information that they had detective Scogin has been in the special assault unit for over 18 years at that point in time human trafficking had become a significant issue in Spokane Washington which is in his affidavit which is in the record and based upon the information that he had in the recent training that he'd received that was his that was his probable statement that officer Chamberlain made was at the scene where the search warrant was executed yes your honor okay was that necessary probably not but I don't know that were pictures of the plaintiffs released at that time your honor I'm sorry I can't answer that Mr. Wall may be able to but I don't I don't have that recollection right now my apologies so with respect to I've got about three minutes left and I would like to talk just very briefly about the court's ruling and the issue which was qualified immunity as this court is well aware there is a different Washington still follows I got a spinelli the federal courts do not I do believe that either one of those tests whether or not we're talking about Washington's probable cause or more importantly perhaps before this court is the issue of the the federal that is Illinois's versus gates which is the the deciding case and both of those because I'm just a couple minutes left I will lump them together recognizing that they do have different standards both of those require that the courts look at or the deputy looks at the totality of circumstances judge pies you raise the issue of the search warrant I do believe that search warrant is a very crucial component of the probable cause because that the information that was used in the search warrant at 2 30 a.m. doesn't change or diminish in terms of the probable cause that detective Scogin could use to make those arrests more information when he got out to the scene yes some of it was inconsistent with what he put in the affidavit yes your honor and I don't that's not an uncommon occurrence when you do a search warrant you find different information but if you go to the information that he learned after the search which I've already noted for the record there was a particular the computers and he articulated look the problem with human trafficking and and sex crimes are they do use the internet they do use Craigslist they use back page yeah you know I learned all sorts of things that I didn't know but that's how they solicit and and market women for for sex and he articulated all of that and given that it was human trafficking he based upon his 27 plus years of experience he determined that it was a prudent and probable cause was established to make the determination to make the arrest didn't go any further granted but that's what probable cause is designed to do into custody and spent what six days in custody they did your honor it was a long weekend that's a significant it it was it was a long weekend and liberty and unfortunately they did not bond out they did get a bond hearing and none of them bonded out so again the here the detective ultimately determined they didn't stay in jail until that was determined but the detective ultimately did determine that there was not sufficient probable cause the focus has to be on the facts that were learned for the search warrant and for the that were discovered after the search warrant one final quick question yes your honor did officer chamberlain issue a public statement when the charges were dropped answers no isn't it I I don't have again you may ask mr. wall that I don't have a specific answer for that I believe that it was covered in the media but it would not have been the front page information thank you any further questions your honors thank you thank you counsel thank you let me read you what deputy chamberlain told the press everything that our victim said was going to be in the residence is in the record she quoted it we are familiar with it how about answering was there ever an apology as far as I'm aware of no it's not in the right if there was one it's not in the record no no how about was there a press release by the public information office including detective chamberlain when your charges were dropped against your clients I'm not aware that there was anything like that I don't believe there was there's nothing in the record I do want to address the probable cause issue here's what depth detective Scogin said to ms. Wilcox 20 days after this incident this entire case is you the entire case is what you're prepared to say it's that we have absolutely not a shred of other evidence we found no other girls we found no guns we found no drugs he's telling her we have nothing other than your statement and that was just as true when he made that arrest and he knew that was true when he made those arrests when he interviewed her a month later or three weeks later this is 20 days later when he's talking to her because they still haven't found anything but he knew that because he knew they had found none of these things in that search he knew all this when he made those arrests but why would that mean there's not probable cause because if what she said gives probable cause first of all what she says by itself could never be probable cause because you have to have something that would make her a credible witness or a reliable witness if you're going to rely on her statements they don't have any evidence they don't know who she is they've had no prior contact with her so they don't have a history so the only way they can determine if this wild story she's telling them has any truth to it is to verify some of the facts of criminal activity again they have to verify facts of criminal activity not innocuous facts not just that she knows some people or that she's been to some address but that would facts that would support her allegations of criminal conduct by the people they're arresting and the one thing they could have done was to be have to have been to found some of these things at the house counsel you think that they can't credit her statement as a victim for probable cause not under Washington law until they have other evidence corroborating that's a that's what Washington law is the Aguilar Spinelli test you must have some other way to at least corroborate so that a reasonable person would leave this story is true it's it until you have that it's just a story by being told by someone you don't know and actually what they found out told them she was not credible okay counsel you're over thank you your time but we've taken in there with her questions well I want to thank both counsel for their arguments and for traveling from Spokane and we appreciate it
judges: Hawkins, Gould, Paez